ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GILBERT CHUNG,<br><br>Defendant. | CASE NO. CR 13-00069 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant GILBERT CHUNG to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $200 special assessment, and $30,000 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

U.S.' SENT'G MEMO                             1
*United States v. Chung*, CR 13-00069 CRB

# BACKGROUND

Defendant Gilbert Chung is charged with participating in the conspiracy in San Francisco County from February 2010 through September 2010 and participating in the conspiracy in San Mateo County from January 2010 through December 2010. Dkt.. 1, 41. In 2009, Chung became interested in investing in foreclosed properties after relocating from New York to San Francisco and being laid off by his employer E-TRADE. Presentence Report ("PSR") ¶ 15. With partners and a major investor, Chung formed DMG Assets, LLC as a vehicle for investing in foreclosed properties. *Id.* After purchasing "eight or nine" properties, on January 27, 2010, he was approached by Mohammed Rezaian to stop bidding on 385 Michelle Lane in Daly City. *Id.* Rezaian told him that he would not get the property unless he paid Rezaian $1,000. *Id.* Chung agreed to the payment. *Id.* When Raymond Grinsell qualified to bid on the same property, Rezaian offered to negotiate a payoff with Grinsell in exchange for Chung and Rezaian not bidding on this property. *Id.* Chung agreed and was paid for not bidding against Grinsell. *Id.* Chung split this money with his partners. *Id.*

On another property, Chung refused to take a payoff, and Rezaian bid the price up $5,000. *Id.* ¶ 16. Chung believed that Rezaian was "trying to teach Chung a lesson." *Id.* Chung soon learned that Rezaian worked with Grinsell, Joe Giraudo, Dan Rosenbledt, and Kevin Cullinane. *Id.* After discussing with his partners the threats of being outbid, Chung and his partners decided that entering into payoff agreements was "the cost of doing business" at the auctions. *Id.*

When a dispute arose between Rezaian and Chung over a payoff, Giraudo mediated, resulting in Chung being "instructed" by Giraudo to pay Rezaian $1,000. *Id.* ¶ 17. On another occasion, Chung agreed to a payoff, and was taken to Giraudo's car where he was paid from a bag of cash Giraudo had in his trunk. *Id.*

Chung continued to operate at the San Francisco and San Mateo auctions, both receiving and making payments to suppress bidding. *Id.* When Chung made payoffs, they were entered as "acquisition costs" on DMG's records. *Id.* Chung knew it was wrong to participate in payoff agreements. *Id.*

Gilbert Chung agreed that he rigged auctions on 23 properties, split between San Francisco and San Mateo Counties. *Id.* ¶ 18. As stipulated in his plea agreement, his total volume of commerce is $2,532,072.

On February 5, 2013, Chung was charged by information with two counts of bid rigging and two counts of conspiracy to commit mail fraud. Dkt. 1. On February 20, 2013, Chung pleaded guilty and began cooperating with the government's investigation. Dkt. 5. On September 19, 2017, by stipulation, Chung withdrew from his original plea agreement and entered a new plea agreement to bid-rigging charges only. Dkt. 41.

## ARGUMENT

**A.     Sentencing Guidelines Calculations**

   **1.     Criminal History**

In Paragraph 12 of the plea agreement, the parties agree that Chung's Criminal History Category is determined by the Court. The Presentence Report (PSR) calculates Chung's Criminal History Category as I, based on no criminal history. PSR ¶¶ 36-40.

   **2.     Offense Level**

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 35. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 26-35. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from twelve to eighteen months of imprisonment.

   **3.     Fine and Restitution**

The PSR calculates a fine range of $25,320 to $126,203, consistent with the plea agreement. PSR ¶ 75; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $4,000 and $40,000. Dkt. 41. This fine range was initially agreed

to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement. In conjunction with its custodial recommendation, the government recommends a $4,000 fine.

The government recommends restitution in the amount of $30,000, consistent with the plea agreement. Dkt. 41.

**B.      Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 30 percent reduction from the low end of the Guidelines range of twelve months, resulting in a sentence of eight months.

The timing, significance, nature and extent of Chung's cooperation warrant a 30 percent reduction. Chung entered his plea agreement pre-indictment on February 20, 2013, and immediately began cooperating in the investigation. His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Chung provided a candid interview with the FBI. During his interview, Chung provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements. Chung also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.      Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Chung's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the

commentary in the applicable Guidelines.  The commentary to the Guidelines makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background.  A fine alone—in the absence of a custodial term—would not serve as an adequate deterrent.  The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.  Chung did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his lack of prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Gilbert Chung to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $200 special assessment, and $30,000 in restitution.

Dated:  April 19, 2018                                  Respectfully submitted,

                                                              /s/
                                                        MICHAEL RABKIN
                                                        Trial Attorney
                                                        United States Department of Justice
                                                        Antitrust Division